**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tamara Kay Bennett, | CIV 13-865-PHX-MHB |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Tamara Kay Bennett's appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

On January 13, 2010, Plaintiff filed an application for disability insurance benefits alleging disability beginning June 19, 2009. (Transcript of Administrative Record ("Tr.") at 21, 131-37.) Her application was denied initially and on reconsideration. (Tr. at 70-73, 75-82.) Thereafter, Plaintiff requested a hearing before an administrative law judge. (Tr. at 97-98.) A hearing was held on May 22, 2012, (Tr. at 55-69), and the ALJ issued a decision finding that Plaintiff was not disabled (Tr. at 18-32). The Appeals Council denied Plaintiff's request for review (Tr. at 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4)  if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5)  if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 19, 2009 – the alleged onset date. (Tr. at 23.) At step two, he found that Plaintiff had the following severe impairments: polyarteritis nodosum with recurrent headaches. (Tr. at 23-25.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 25.) After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)." (Tr. at 25-28.) The ALJ stated that Plaintiff "can occasionally lift twenty pounds and can frequently lift ten pounds. She is able to stand and walk for about six hours in an eight-hour workday. Her ability to push or pull is unlimited. The claimant is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs. She should never climb ladders, ropes, or scaffolds."[1] (Tr. at 25-28.) The ALJ determined that Plaintiff "is capable of performing past relevant work as a mortgage processor," stating that this work "does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. at 28.)

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

1       Therefore, the ALJ concluded that Plaintiff has not been under a disability from June
2  19, 2009, through the date of his decision. (Tr. at 28.)

### IV. DISCUSSION

In her brief, Plaintiff contends that the ALJ erred by: (1) failing to properly weigh medical source opinion evidence; (2) failing to properly consider her subjective complaints; and (3) failing to consider her mental impairment as severe. Plaintiff requests that the Court remand for determination of benefits.

**A.     Medical Source Opinion Evidence**

Plaintiff contends that the ALJ erred by failing to properly weigh medical source opinion evidence. Specifically, Plaintiff argues that the ALJ "err[ed] by rejecting the treating physician assessments from [Alejandro] Morales, M.D., and by adopting instead an assessment by the initial state agency physician that was based on a limited records review without the benefit of a personal examination."

"The ALJ is responsible for resolving conflicts in the medical record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d at 1164. Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The Ninth Circuit has held that a treating physician's opinion is entitled to "substantial weight." Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). A treating physician's opinion is given controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other

1 substantial evidence in the record," then it should not be given controlling weight. Orn v. Astrue, 495 F.3d 624, 631 (9th Cir. 2007).

If a treating physician's opinion is not contradicted by the opinion of another physician, then the ALJ may discount the treating physician's opinion only for "clear and convincing" reasons. See Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830). If a treating physician's opinion is contradicted by another physician's opinion, then the ALJ may reject the treating physician's opinion if there are "specific and legitimate reasons that are supported by substantial evidence in the record." Id. (quoting Lester, 81 F.3d at 830).

Since the opinion of Dr. Morales was contradicted by both examining and reviewing doctors' opinions, as well as, other objective medical evidence, the specific and legitimate standard applies.

Historically, the courts have recognized the following as specific, legitimate reasons for disregarding a treating or examining physician's opinion: conflicting medical evidence; the absence of regular medical treatment during the alleged period of disability; the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain; and medical opinions that are brief, conclusory, and inadequately supported by medical evidence. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

Dr. Morales treated Plaintiff from June 2008 through April 2012. He indicated that Plaintiff suffers from headaches with visual disturbance, mood changes, malaise, and photosensitivity. Dr. Morales further noted that Plaintiff suffers from moderate fatigue that interferes with her attention and concentration as well as causes deficiencies in persistence and pace – resulting in failure to complete tasks in a timely manner. Dr. Morales also indicated that Plaintiff suffers from persistent moderately severe pain that frequently interferes with her attention and concentration. He concluded that Plaintiff was unable to sustain work activity on a continuing basis. (Tr. at 190-91, 192-93, 194-95, 420-23.)

In May 2010, as part of the administrative proceedings, Plaintiff was evaluated by Mary Harper, D.O. Plaintiff reported having one headache per week that was aggravated by exertion. She reported that she went to the farmer's market on the weekends and had breakfast with friends, and that she could help out around the house with little physical restraint, especially for short periods of time. Dr. Harper's examination findings were unremarkable and, as such, Dr. Harper opined that Plaintiff did not have a condition that would impose work-related limitations for 12 continuous months. (Tr. at 370-73.)

In July 2010, as part of the administrative proceedings, S. Garcia, M.D., reviewed Plaintiff's medical records. Dr. Garcia opined that Plaintiff had the following limitations: lifting or carrying 20 pounds occasionally and frequently 10 pounds; standing or walking 6 hours in an eight-hour day; sitting six hours in an eight-hour day; a limitation to occasionally performing postural movements; and avoiding ladders, ropes, or scaffolds. Dr. Garcia reviewed Dr. Harper's report as well as Dr. Morales's records in finding that Plaintiff could perform light work, and noted that Dr. Morales's opinions were inconsistent with his progress notes. (Tr. at 378-82.) Dr. Garcia's opinion that Plaintiff could perform light work was subsequently confirmed by Robert Estes, M.D., who reviewed Plaintiff's medical records in January 2011. (Tr. at 80.)

In his evaluation of the objective medical evidence, the ALJ first addressed Dr. Morales' opinion stating, "[t]he undersigned rejects this opinion because it is quite vague and conclusory with little specificity regarding the claimant's particular limitations." Citing to treatment records from the Arizona Kidney Disease and Hypertension Center, the ALJ further noted that Dr. Morales' overall assessment was contradicted by his own treatment notes. The ALJ also stated that ultimate conclusions given by treating physicians that find a claimant "disabled," "unable to work," "can or cannot perform a past job," or "meets a listing or the like" are not medical opinions but are issues reserved to the Commissioner. Lastly, the ALJ noted that given Plaintiff's allegations of totally disabling symptoms, "one might expect to see some indication in the treatment records of restrictions placed on the

1  claimant by the treating doctor. Yet a review of the record in this case reveals no restrictions
2  recommended by the treating doctor." (Tr. at 27.)

3  The ALJ next discussed Dr. Harper's opinion giving "significant weight" to her
4  ultimate conclusions as being consistent with Dr. Harper's examination findings which were
5  "largely negative." Despite Dr. Harper's findings, the ALJ found that the record "better
6  supports" limiting Plaintiff to light work given Plaintiff's history of polyarteritis nodosum.
7  (Tr. at 27.)

8  Lastly, the ALJ addressed the conclusions reached by the state agency physicians.
9  The ALJ gave great weight to the opinions of Drs. Garcia and Estes stating that their
10 opinions are consistent with Plaintiff's reported activities and with her treating physicians'
11 notes indicating that Plaintiff's symptoms were stable. (Tr. at 28.)

12 The Court finds that the ALJ properly weighed the medical source opinion evidence,
13 and gave specific and legitimate reasons, based on substantial evidence in the record, for
14 discounting Dr. Morales' opinion. The ALJ discredited the medical opinion due to
15 inconsistencies with Plaintiff's treatment record and the medical evidence as a whole. The
16 ALJ also found that Dr. Morales' opinion was vague, conclusory, and lacked supporting
17 clinical findings. See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008)
18 (finding the incongruity between doctor's questionnaire responses and her medical records
19 provides a specific and legitimate reason for rejecting the opinion); Connett v. Barnhart, 340
20 F.3d 871, 875 (9th Cir. 2003) ("We hold that the ALJ properly found that [the physician's]
21 extensive conclusions regarding [the claimant's] limitations are not supported by his own
22 treatment notes. Nowhere do his notes indicate reasons why [the physician would limit the
23 claimant to a particular level of exertion]."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th
24 Cir. 2001) (holding that the ALJ properly rejected a physician's testimony because "it was
25 unsupported by rationale or treatment notes, and offered no objective medical findings to
26 support the existence of [the claimant's] alleged conditions"). Therefore, the Court finds no
27 error.
28 \\\

## B.     Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in rejecting her subjective complaints in the absence of clear and convincing reasons for doing so.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester, 81 F.3d at 834).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn, 495 F.3d at 637-39.[2] The ALJ also considers "the claimant's work record and observations of treating and

---

[2] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair, 885 F.2d at 603. The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily

- 8 -

1  examining physicians and other third parties regarding, among other matters, the nature,
2  onset, duration, and frequency of the claimant's symptom; precipitating and aggravating
3  factors; [and] functional restrictions caused by the symptoms ... ." Smolen, 80 F.3d at 1284
4  (citation omitted).

5  Plaintiff was represented by counsel at the 2012 administrative hearing. (Tr. at 57.)
6  Plaintiff testified that she suffered from fatigue, muscle aches, poor sleep, headaches,
7  gastrointestinal pain, and joint pain. (Tr. at 62, 64.) She said that her medications caused
8  weight gain, fatigue, and memory loss. (Tr. at 62-63.) Plaintiff testified that she had
9  headaches every day in the summer, and two to three time per week in the winter; she said
10 activity made her headaches worse. (Tr. at 63-64.) Plaintiff said that she could stand or walk
11 for about 15 minutes at a time, and could only sit still for a few minutes. (Tr. at 66.) With
12 regard to activities of daily living, Plaintiff said that she could vacuum a room, empty half
13 the dishwasher, or do a load of laundry before needing to rest. (Tr. at 67-68.)

14 Having reviewed the record along with the ALJ's credibility analysis, the Court finds
15 that the ALJ made extensive credibility findings and identified several clear and convincing
16 reasons supported by the record for discounting Plaintiff's statements regarding her pain and
17 limitations. Although the ALJ recognized that Plaintiff's medically determinable
18 impairments could reasonably be expected to cause the alleged symptoms, he also found that
19 Plaintiff's statements concerning the intensity, persistence, and limiting effects of the
20 symptoms were not fully credible. (Tr. at 26-27.)

21 In his evaluation of Plaintiff's credibility, the ALJ first referenced Plaintiff's daily
22 activities. (Tr. at 26, 24.) "[I]f the claimant engages in numerous daily activities involving
23 skills that could be transferred to the workplace, an adjudicator may discredit the claimant's
24 allegations upon making specific findings relating to the claimant's daily activities." Bunnell
25 v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (citing Fair, 885 F.2d at 603); see Berry v.
26 Astrue, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (claimant's activities suggested a greater

27
28 transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

- 9 -

1 functional capacity than alleged). Specifically, the evidence demonstrated that although
2 Plaintiff reported at the hearing that her daily activities are limited, she reported greater
3 activities to examining sources. For instance, she reported to Dr. Harper that she was able
4 to "help out around the house with very little physical restraints, especially for short periods
5 of time." Plaintiff also indicated that she enjoyed going to breakfast and to the Farmer's
6 Market with friends. (Tr. at 26, 369-74.) Further, Plaintiff reported to Robert Glass, Ph. D.,
7 that she continues to sew, read "how-to" books, keep up with current events, perform
8 computer research, cook, weed the yard, sweep, and do laundry and other household chores.
9 (Tr. at 24.) While not alone conclusive on the issue of disability, an ALJ can reasonably
10 consider a claimant's daily activities in evaluating the credibility of his subjective
11 complaints. See, e.g., Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008)
12 (upholding ALJ's credibility determination based in part of the claimant's abilities to cook,
13 clean, do laundry, and help her husband with the finances); Burch v. Barnhart, 400 F.3d 676,
14 680-81 (9th Cir. 2005) (upholding ALJ's credibility determination based in part on the
15 claimant's abilities to cook, clean, shop, and handle finances).

16 Next, the ALJ considered Plaintiff's treatment record and the objective medical
17 evidence finding the various treatment notes and medical records do not confirm the
18 limitations alleged by Plaintiff. (Tr. at 26-27); see Carmickle, 533 F.3d at 1161
19 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's
20 subjective testimony.") (citation omitted); Batson v. Comm'r of Social Security, 359 F.3d
21 1190, 1197 (9th Cir. 2004) (lack of objective medical evidence supporting claimant's
22 allegations supported ALJ's finding that claimant was not credible). Specifically, Plaintiff's
23 medical records demonstrated that the medications have been "relatively effective in
24 controlling the claimant's symptoms," and that Plaintiff was noted to be doing well, stable,
25 under control, and free of back pain with no muscle or sensory symptoms. (Tr. at 26, 224-
26 332, 333-34, 335-57, 386-90.) Further, the ALJ found that although Plaintiff alleged various
27 side effects from her treatment, the medical records and office treatment notes contradict
28 Plaintiff's assertions indicating that Plaintiff's symptoms were stable. (Tr. at 26-27, 400-07,

1   386-90, 412-19.)  Also, in contrast to her reports of constant symptoms, Plaintiff reported to
2   her treating physicians only "a few episodes" of lower extremity pain and muscle cramps,
3   the ability to sleep six to seven hours per night, and headaches on average once per week.
4   (Tr. at 27, 386-90, 369-74.)

5   Lastly, the ALJ noted that the record reflected significant gaps in Plaintiff's course
6   of treatment receiving limited treatment in 2011 and 2012.  (Tr. at 27, 412-19, 424-32); see
7   Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (evidence of "conservative treatment"
8   is sufficient to discount a claimant's testimony regarding severity of an impairment); Meanal
9   v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ may consider Social Security disability
10  claimant's failure to follow treatment advice as a factor in assessing Social Security disability
11  claimant's credibility).

12  In summary, the Court finds that the ALJ provided a sufficient basis to find Plaintiff's
13  allegations not entirely credible.  While perhaps the individual factors, viewed in isolation,
14  are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor
15  is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors
16  that led to the ALJ's decision.  The Court concludes that the ALJ has supported his decision
17  to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore,
18  the Court finds no error.

19  **C.    Plaintiff's Mental Impairment**

20  Plaintiff contends that the ALJ erred in finding that her mental impairment was non-
21  severe.

22  At the second step of the sequential evaluation process, the medical severity of a
23  claimant's impairments must be considered.   See 20 C.F.R. § 404.1520(a)(4)(ii).   "An
24  impairment or combination of impairments is not severe if it does not significantly limit [the
25  claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).
26  "Basic work activities" refers to the ability and aptitudes necessary to do most jobs, such as
27  physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out,
28  and remembering simple instructions; use of judgment; responding appropriately to

1  supervision, co-workers and usual work situations; and dealing with changes in a routine
2  work setting. See 20 C.F.R. § 404.1521(b).

3  "The steps outlined in 20 C.F.R. § 404.1520 apply to the evaluation of physical and
4  mental impairments." 20 C.F.R. § 404.1520a(a). In addition, when the severity of mental
5  impairments is evaluated, a special technique is followed. See id. Under the special
6  technique, first it is determined whether the claimant has a medically determinable mental
7  impairment, and then the degree of functional limitation resulting from the impairment(s) is
8  rated. See 20 C.F.R. § 404.1520a(b). Rating the degree of functional limitation is based on
9  the extent to which the claimant's impairment(s) interferes with his ability to function
10 independently, appropriately, effectively, and on a sustained basis. See 20 C.F.R. §
11 404.1520a(c)(2). Section 404.1520a(c) expressly references the Listing of Impairments for
12 information about the factors to be considered in rating the degree of functional limitation.
13 See 20 C.F.R. §§ 404.1520a(c)(2), (3). Citing to 12.00C of the Listing of Impairments, it
14 identifies four broad functional areas in which the degree of functional limitation is to be
15 rated: activities of daily living; social functioning; concentration, persistence, or pace; and
16 episodes of decompensation. See 20 C.F.R. § 404.1520a(c)(3). After the degree of
17 functional limitation is rated, then the severity of the claimant's mental impairment(s) is
18 determined. See 20 C.F.R. § 404.1520a(d).

19 Here, the ALJ applied the special technique for evaluating Plaintiff's medically
20 determinable mental impairment of adjustment disorder, with mixed anxiety and depressed
21 mood finding that said condition does not cause more than minimal limitation in Plaintiff's
22 ability to perform basic mental work activities. He expressly stated, "[i]n making this
23 finding, the undersigned has considered the four broad functional areas set out in the
24 disability regulations for evaluating mental disorders and in section 12.00C of the Listing of
25 Impairments []." The ALJ then explained his findings that support his ratings of no more
26 than "mild" limitation in any of the first three functional areas and "no" episodes of
27 decompensation which have been of extended duration in the fourth area. Citing to the
28 regulations governing the special technique for evaluation of mental impairments, the ALJ

concluded that Plaintiff's mental impairment is non-severe because it causes no more than mild limitation in any of the first three functional areas and no limitation in the fourth area. See 20 C.F.R. 404.1520a(d)(1).  Therefore, the Court finds no error.

## V.  CONCLUSION

Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for disability insurance benefits in this case.  Consequently, the ALJ's decision is affirmed.

Based upon the foregoing discussion,

**IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social Security be affirmed;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.  The judgment will serve as the mandate of this Court.

DATED this 5th day of August, 2014.

*[signature]*
Michelle H. Burns
United States Magistrate Judge